In Allen v. LaSalle Bank. The Good morning, Your Honors. Louis Adler on behalf of the appellant and my co-counsel, Roger Mattson, I'll be speaking. We reserve two minutes for rebuttal. That's granted. We don't get to say much in two minutes, but. Well, I hope, this is, we were actually before the court in June on this issue in the related case of Ogden. Oh, yes. Where I think we addressed many of these issues and really today I think I want to focus. I wasn't a part, however, of that quorum, so you can help me. Oh, thank you. It wasn't the same panel. I'm sorry. I think I'm the only. Judge Berry was there. Oh, no. One way you could help me, Mr. Adler, is to tell me on what section or sections of the statute you rely upon in that I think even the district court was perhaps a bit perplexed by that because I think she indicated in her opinion that she was not able to tell what sections or subsections of the statute you relied upon. We are relying on 1692F1, which is the collection of amounts that are not authorized by the agreement or permitted by law. This is not a case where the warning wasn't provided in the letter or that it was misrepresented as to who was sending the letter. F1? 1692F. That restricts the scope of the application of the act by including consumer. Well, this is a consumer. I understand that. Okay. I really do. Yes. I mean, the whole act is consumer protection as well as, as we've talked about before, the purpose of the act was actually threefold to protect collectors that are doing things in accordance with the act following the law, stop collectors from violating the act and doing these various things that are illegal, for example, collecting amounts that are not authorized by the law, and then the third was to protect consumers. Those are three purposes of, targets of purposes of protections under the act. What's your bottom line? I'm not sure. Should communications from a debt collector to a consumer's lawyer be actionable or not? They should be actionable, and especially they should be actionable when the amounts that are being asked for are not authorized under the law. And that's the real distinction, I think, between the Ninth Circuit case and what we're talking about here today. Well, you want to use the least sophisticated debtor standard. You want to treat the attorney who's receiving the communication as fungible with the debtor, correct? That is correct. But when we talk about that focus, again, that focus is dealing with 1692E, which talks about, for example, whether or not there was a clear telling you about your rights under the act, and whether the language of the letter itself was clear. That's the deceptive portions of the dealing with deception. That's what the case law is talking about. For analytical purposes at all, would it help us at all to think of this as two steps, first with respect to whether or not the communication needs to be directed only to a consumer, or whether it doesn't matter under the statute to whom the communication is directed, and then assuming that it is not restricted, that the communication could be to an attorney, that we are secondly, as a second issue, looking to what standard ought to apply, least sophisticated consumer or some other standard as was dealt with in the Seventh Circuit case, Everey or whatever the hell. Well, Heinz is the only Supreme Court case that dealt with the issue of who the communication went to. But that's not the facts of this case at all. Well, actually, it is the facts. That was not the issue in Heinz. Actually, the fact that there was a communication to an attorney was only mentioned in passing. That was not the issue before the Supreme Court. Well, it was whether a debt collector, whether an attorney was a debt collector. That was the issue for the Supreme Court. That was the primary issue. But the facts of the case were almost identical in that the allegation in Heinz was that the amount being requested was fraudulent under the same section of the statute, and that the communication went to the debtor's attorney. That's the second question. I mean, the question before us, I think, unless maybe nobody agrees with me, is to whom the communication is directed to, period. And in this case, the communication was for the payoff of a mortgage. So the ultimate recipient of this would be the consumer because it was for them. No, it was directed to the attorney. It was sent to the attorney, but for the benefit of paying off the mortgage for the consumer. That was why it was sent. Well, but that doesn't matter. Doesn't the statute deal with to whom the communication is sent? It does not. 1692F. 1692F, in its clear terms, says a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. It's not restrictive. To whom it is sent. That is correct. And if you look at one, it goes even farther. So 1692F, in and of itself, does not rule out receipt by an attorney for the debtor. Correct. The focus is on what the debt collector is doing, not the recipient. Correct. But our least sophisticated consumer standard, which I believe we borrowed, but it's part of this Court's jurisprudence, doesn't have its source in the statute. It's a judicially created statute. There is no question that it's judicially created. And the focus, again, is on whether the language of the correspondence is deceptive. So were we, for sake of argument, to get past the first question, that 1692F, which you've conceded here is what you rely upon, does not exclude an attorney as a recipient of the communication or as the object of an unfair or unconscionable means. That is correct. We still need to deal with what's standard. Well, that's what you now need to look at Section 1, the next paragraph down under the Act. And it says the collection of any amount, including any interest, fee, charge, or expense incidental to the principal obligation, unless such amount is expressly So, again, it's looking at the actions of the collector. How does that help us with the standard question? Well, because, again, what we're looking at is objective. You have an objective standard. Does the law allow them to collect that amount, or does the agreement allow them to collect that amount? Doesn't it strike you, however, as being something of an absurd result, if I may use such an extravagant term, to characterize an attorney, a member of the bar, as the least sophisticated consumer or debtor, as we sometimes refer to it in our own cases? I'm not. But, see, in this circumstance, and let's look at the exact facts of the case. We need to determine what standard we are to apply, don't we? You're invoking our Brown case, but that was a lender-debtor communication. This is not a lender-debtor. Not a credit company. This is the attorney for the lender sending us the payoff. No, I understand that. But, again, as I look at the statute. You're not sending us. You're sending a lawyer for the consumer. Sending a lawyer. Well, again, the focus of this portion of the statute is on the collector's action. Did the letter itself include amounts? Was the demand for amounts that were not allowed by the agreement or law? Well, but I don't know how we get to that. Well, here's the problem. Until we decide whether the communication, the recipient of the communication, falls within the statute. And I don't understand the Seventh Circuit. I don't understand the Seventh Circuit. How does a credit company, how is a credit company supposed to know whether the recipient is knowledgeable or not? It seems to me that we need a blanket rule. Either you send a deceptive letter and violate the statute or it's not. But why should we get into determining any kind of analysis, determining how sophisticated lawyers are or non-lawyers are? Yes. And that was the point that I made when we were here before is that we couldn't have a standard that separated out the recipient being the attorney. So you think that any recipient, if the credit company sends a deceptive letter and it's Yes. And in the circumstance that we look here, we don't even have to make the determination it's deceptive because they're trying to collect amounts that are not allowed. Okay. Yeah. Any communication that's not permissible, whether it's deceptive or not. Excuse me. Any communication is actionable under the Act, no matter to whom it goes, right? That's your position? If it was direct, it's in the stream for the consumer, yes. I mean, the attorney is only there. What's wrong with the black letter rule that Judge Barry just set out? That would be fine. I think there's plenty wrong with it. I speak only for myself. But I don't think we have to go quite so far. Why? It's perfectly, I mean, isn't it within the terms of the statute? Well, the terms of the statute absolutely say that if a collector is trying to collect amounts that are not allowed by the agreement or the law, it's a clear violation, regardless of how they go about doing that. Period. Now, maybe there's no damages afterwards if you send it to a, if it turns out to be a knowledgeable person. And that's the facts in this case. And that's what the judge said was, well, the plaintiff's attorneys are quite knowledgeable and they caught this right away. But the reason these, I mean, we're talking about a number of different inquiries here. First of all, I mean, damages is an ultimate question, but in the first instance we'd have to talk about coverage. Yes. Who's covered under the statute? Coverage of the statute. You've chosen to rise or fall on 1692F. And I agree with you that no one has carved out, Congress has not carved out attorneys under 1692F. As recipients. As recipients. As recipients. But that having been said, we still, as a court, a district court in the first instance, has to deal with what standard to apply. A judicially created principle of law. And doesn't it seem at least interesting that Congress in promulgating this statute has chosen to recognize at least implicitly the importance of attorney recommendation, attorney representation, by proscribing contact with the consumer if the debt collector knows he's represented by the consumer. That is correct. And the act does. Isn't that significant? Yes, because it contemplates, Congress contemplates that an attorney will be involved in the process. Well, you have other sections of the statute as well in which Congress restricts the scope of its application by including consumer in the text. I mean, you hark on one provision, but you've got 692G, you've got F78, for example, you know, where several sections of the act restrict its scope. Sure. To the consumer. To the consumer. But again, if we look at F, its focus is on the collector. This is the collector's behavior. The prima facie, it's not, it's not the fact that anyone even heard the, it's the, if the tree fell in the woods and no one heard it, the collector is still obligated because they tried to do something that was prescribed against in the statute. It didn't matter that the consumer or the attorney received that. It's focused specifically. That's why F is so important. It focuses specifically on the conduct of the collector, not on the recipient. And that's the difference. When we look at, for example, E, that deals with the recipient. Was it deceptive? Was the language that was used improper? Your red light. Where in the legislative history of the act is there any support for your conclusion that Congress intended to make communications to a debtor's attorney actionable? Okay. You can answer that even though your red light is on. It's perfectly all right. Because the only exception on communications that are exempt from the act are pleadings. And if you only exempt pleadings, you have to implicitly acknowledge, as Judge Smith had also talked about, communicate that the collector is not allowed to communicate to an attorney once, I mean, to the consumer, once they're contacted by an attorney on behalf of the consumer. Those two things together have to be taken to conclude that Congress knew that an attorney would be involved on behalf of the consumer and that these protections would survive that contact. Thank you. Thank you. Jesus. Oh, my God. Good morning. Good morning. No, yes. Still? Yes. Time flies when you're having a great time. Just about. Yeah, it's really. My name is Andrew Sayles. I'm with the law firm of Connell Foley and I represent defendant appellant or appellee find such. What's your name again? Andrew Sayles. Okay. We couldn't hear it. I'm sorry. Go ahead. With Connell Foley for appellee find such con in Shepard. I've reserved 11 minutes for my portion of the argument. My colleague, Mr. Schifflebein, on behalf of LaSalle Bank has asked to. I'm having difficulty hearing you. Oh, I'm sorry. You're not talking clearly. Okay. I'm sorry. My colleague for LaSalle Bank has asked to reserve four minutes for his argument. Okay. So you're taking 11 minutes and he's taking four minutes. You know that? Ebony? Okay. Thanks. That's correct. As set forth in our motion papers, we believe the district court properly dismissed the complaint although we believe the district court went too far in dismissing it on the competent attorney stand. Parenthetically, going too far, the old and infirm widow who had one more payment to go on a 30-year mortgage for $408. I don't think that fine and company covered themselves in glory here. Did it? The circumstances are not the most sympathetic to the fine. No, I think that's an understatement. I would agree. Yes. But the fact. I've had my pound of flesh. The fact remains there was a default and they had. But you are your client's client. Yes. Yes, Your Honor. But what we argue below and what I believe should be the proper decision as was perhaps reflected earlier is that the FDCPA is not intended to apply to communications to debtor's counsel. Where does it say that? It does not explicitly say that. Nothing in the text supports that. That's correct. But if you look at the purpose. I mean, you've heard your adversary here lay claim to 1692F. He's limited his claim to that section of the statute. But there's nothing in the plain text that suggests the kind of limitation you're suggesting. That's correct. I guess it cuts both ways, Your Honor. You know you're mumbling. I'm sorry. I'm having trouble distinguishing what you're saying. I can hear. Judge Smith's argument, I believe, cuts both ways. Judge Smith doesn't argue. I'm sorry. His position. You're absolutely correct. The FDCPA does not indicate in any fashion that communications among attorneys are expressly excluded. Not among attorneys, just from the credit. Yes, from a creditor to a debtor's counsel. To an attorney, yes. That's correct. But if we analyze the intention and purpose of the Act, we know that it's an Act crafted to protect consumers in their capacity as consumers. It identifies consumers as individuals who would not otherwise be able to protect themselves and who would be susceptible to abusive debt collection practices. And when we apply that understanding to the facts we have here, where a debtor was represented by counsel who provided those protections to them, it interrupts and supersedes the protections afforded under the Act, and we no longer need it. And that rationale has been upheld by a number of circuit courts around the country. And obviously we've cited to the Guerrero Court from the Ninth Circuit for that proposition, but other circuits in DICTA and other have provided indications that also support that. Well, other circuits, plural? I mean, you've got the Second Circuit in DICTA. What other circuits? Well, in a non-presidential decision in Schaffkrause, the Third Circuit noted that there was a severe question as to whether those communications would be actionable. The Eighth Circuit has indicated. Well, first of all, what happens in our non-presidential opinions doesn't happen. It's like the tree that wasn't heard. Yes, certainly. And I'm not arguing that's a controlling decision, Your Honor. You can argue that, because we'll knock it down. Yes, of course. Okay. But there are other circuits as well. The Eighth Circuit has suggested that there were questions. They ducked it. The Eighth Circuit ducked it. They did. You're correct. But they noted a list of it. And if we look within the Third Circuit, the district courts that have addressed this issue have all come down on its interpretation. We really have Guerrero, don't we? And the language of the Second Circuit. Yes, we do, Your Honor, the Kroponicki decision. And we also have the Seventh Circuit, which adopts a middle ground. Can you understand what the Seventh Circuit did? And how it would work? That's the alternative. If you get to your alternative argument, how the reasonable, the competent attorney I'm going to be very interested in seeing how anyone makes this determination and when it's made and after how much discovery can it be made. It's very difficult to identify that. Yeah, but go back to your main argument. With respect to the application, I believe it's clear that if we apply a per se application, we avoid the complications Your Honor is suggesting. The per se application being that whoever you send it to is covered, right? That's a per se application. A communication to a debtor's attorney is not. No, a communication that is erroneous, period. Isn't that the per se argument? Yes, it is, Your Honor. That's his per se argument. To an attorney. To an attorney, correct. But we have to recall the purpose behind the statute to protect consumers. Where there's an attorney interposed, we no longer need that protection. This is not a general. Does it have to be an attorney who's not supposed? It's a negligence attorney who doesn't know anything about the. Well, it presumes that an attorney acting on behalf of a consumer or debtor will act in good faith in accordance with their admission to practice. Well, they may act in good faith, but they may not be knowledgeable. If you had sent it to me as an attorney, I knew a lot about the antitrust laws, at least what I thought were the antitrust laws then. I didn't know a darn thing about the Fair Credit Act, assuming it was in existence in the olden times when I practiced law. But an attorney is presumed to be able to undertake research or analyze an issue on behalf of his client. It's presumed that if you represent a client, you're able to advocate and advance their interests. In this case, that happened. We had a communication that was issued at the request of the debtor's counsel, nonetheless. Got the thing, and three weeks later, files a 22-page answer, counterclaim, and third-party complaint. And thereafter, if the State court's dismissed, files a 23-page complaint here. That seems like ample protection for the debtor. I would agree, Your Honor. It demonstrates that the need is not there. We have, and it also, let me step back. If we apply this to its logical conclusion, we're also going to inhibit the debtor or debt collector's attorneys because it will create a chilling impact or a chilling effect on litigations and settlement. What is it saying to a debt collector's attorney to say, if you communicate with a debtor's attorney, your communications could turn into a claim such as this, an FDCPA claim. Why do you assume that the attorneys are sending this out? Mostly it's just people in the credit company who are sending it out. Is it clear that attorneys always send these out? That's not the way I understand it. Certainly there are debt collectors who are not attorneys. Sure. You're saying that attorneys, so I don't think you can assume that an attorney is the sender, can you? No, not all circumstances. Does it matter whether the attorney is the sender? No, because it's a recipient that is judged on. The FDCPA is a consumer protection statute. It includes restrictions and guidance as to how debt collectors may act, but ultimately it serves to benefit the consumer, the consumer as a consumer, not a consumer with the assistance of counsel to protect their interests. And that goes into the decisions with respect to the application of whether an attorney is required. And as I've known, I think the Percy application is appropriate and the Ninth Circuit adequately addresses that, but the Seventh Circuit similarly provides that. There can't be a dispute that the Ninth Circuit and Seventh Circuit agree. The Ninth Circuit goes into the competent attorney. That's correct. In other words, a competent attorney could have figured all this stuff out, even if he or she was not a practitioner of the precise type of law at issue. But he could have figured it out pretty well, and generally speaking at the end of the day almost everybody is competent. But then they leave the, well, how would they go to know about a false claim? Because then there will have to be an investigation. And that's really a problem with your alternative holding and the only suggestion or alternative argument and the only suggestion that LaSalle makes is when you get into this competent, what is a competent attorney? Supposing he or she picks up 15 of the errors or falsities or deceptive statements within a communication to him or her, but he doesn't pick up the other two or three or four, is he no longer competent? How is this workable? How is it at all workable? Judge Thompson just concluded he was competent. But based on what? I don't know because there are pages and pages of errors in the one-page payoff statement and the assessment of costs and attorneys. It will be circumstance dependent. And shouldn't it matter if the misrepresentation is one of fact or one of law? Well, as noted in the Every Decision, it has to be a misrepresentation that a competent attorney would be able to readily identify. What's a competent attorney? I don't know. How do you define it? It's not accurately defined. And it will leave and impose a burden on district courts to some degree to try to identify them.  There has to be an investigation, doesn't it? Well, there has to be some insight. You're correct, Your Honor. What was at stake in this case? Pardon? What was at stake in this case? What were the specific misrepresentations and misstatements that this plaintiff relied on? Among the allegations were claims that improper fees were collected as part of the total fees and costs as well as the actual attorney's fees as determined under New Jersey court rules. But as we know in the briefs, some of the allegations and the complaints, such as improper sheriff's fee, are found nowhere in the itemization letter. But the fees that were associated with the foreclosure action as permitted under the note that was executed by the debtor and in accordance with New Jersey law, the Fair Foreclosure Act and the rules of court as they're prescribed, as alleged violations of improper fees under those laws. Fees that were, as the district court identified, identifiable. Fees that were essentially established by the court system and or by the legislature. To some degree. For example, the court, the attorney's fees are determined based on an outstanding balance owed and they calculate off the principal balance to determine the allowable attorney fees. But other fees are either permitted under contract and there are some that are specifically prescribed under New Jersey law. And depending on the number of hours that were spent? Well, it doesn't account for hours, Your Honor. Well. But it goes back to the point that an attorney receiving the communication is in a position to identify those. I guess it argues for the person's application. Well, I would receive this notice and I would not know whether or not the DMV did a search. I would not know any of this stuff when I received this one-page payout. If you're a consumer or an attorney. If I'm a lawyer, I won't know that there was a search. I won't know whether there was a title search. I won't know that it was the DMV search. I don't know that any of this stuff does. Presumably an attorney is going to take on clients that he or she is in a position to represent. So then he has to go and find out if this stuff was done, right? There's an inquiry. It just says attorneys research their projects. And this is usually little amounts. Yeah. So is it reasonable to assume that an attorney will do the kind of investigation on a little amount? Well, how much was the amount here? I don't have the exact amount in front of me, Your Honor. You have the non-exact amount? $404. $2,000-some-odd. The total costs and fees were above $2,000. Payoff notice was $2,372.14. And then the attorneys – no, no, it was $2,372.14. Incidentally, those were in documents that were noted as subject to verification. It was an attorney-to-attorney communication. They were asked for figures in the presence of settlement. See, that's what you keep saying, and Judge Barry questioned that. Attorney-to-attorney. You're assuming it's an attorney-to-attorney. Okay. My assumption is that some debt collector – well, here it may be. But there's some debt collector person, you know, to be the attorney. You're correct, Your Honor. It applies for – I guess in this circumstance here we had an attorney-to-attorney communication. But a debt collector could easily have issued the same communication. Judge Sloboda raised a very interesting point. The attorney, to be deemed competent, will have to, in the ordinary case, do some investigation here. Correct. You're dealing with a debtor. Who's going to pay? Does the attorney – is this an act of charity? He's going to do this. Is a debtor going to – this poor old infirm widow woman going to pay for the investigation into the 23 pages of errors that were made here? Well, the attorney has taken on the case and presumably has agreed to represent that client's interests. If the client does not have the attorney there, the protections of the FDCPA step in to provide those protections. Okay. Thank you. You have four minutes for calling. Thank you. Good morning, Your Honors. And it pleases the Court, Chad Schieffelbein on behalf of Apolli LaSalle. Going to your remark, Judge Berry, this was a gotcha kind of lawsuit that was filed by Ms. Allen's attorneys. And you went in there as knight errant amicus and you withdrew it. We praise LaSalle. We spent a considerable time in the state court. We thought we had come to some type of agreement with Ms. Allen. And it turned out that he filed a federal lawsuit within a couple of weeks of having the state court. Maybe they're representing the public interest in that. Maybe it didn't matter here. Maybe it's a matter of principle. What's wrong with that? Well, I'm not questioning the motive. I was just remarking that Judge Berry was correct in that it was a gotcha type of lawsuit here. I'm not sure exactly what the motive was. What's a gotcha type of lawsuit? I'm sorry? I don't have a right to ask Judge Berry. But let me ask you. I didn't say gotcha type of lawsuit. We did. I'm sorry. I was summarizing Judge Berry's comment. What did you mean when you said that? A 23-page complaint filed within a couple of weeks of asking for the letter from find such and said that we've got this letter. There's also, as in the record, indicated that there are at least ten other lawsuits that have been filed by the plaintiff's law firm that have been commented and crowded the dockets in the district court. And that's what I meant by these. Okay. So we can assume that they represent people who get these letters and there's a principle involved. And at least up until this administration, I shouldn't say that, there was nothing wrong in representing an issue like this, right? I mean, I don't like this business of sort of suggesting that there was anything improper in the plaintiff's brief. Whether they win or not is another question. I was just pointing out. I wasn't saying it was improper. I was pointing out the facts and circumstances that led up to this case and that we had spent some time in the state court and then it was filed in federal court. You're not arguing that an attorney receiving a submission from a debt collector is not actionable. You say you have to go to the least. You have to – it's only not actionable if a competent attorney would have understood that the communication is false or misleading or deceptive. Actually, we would agree with fine such that a per se rule, as stated in Guerrero in the Ninth Circuit, would be the best rule. We didn't say that in your brief. I was a little surprised to see that. Well, we noted that we were responding to what the plaintiff had said as far as the district court's error. And what the plaintiff had argued was that there shouldn't be any rule. It should be the least sophisticated consumer, if that. What the district court did was went through all the different analysis. Took the Seventh Circuit's position. I'm sorry? Took the Seventh Circuit. Exactly. Didn't Judge Fletcher dissent in the Ninth Circuit? There was a dissent. What was his position? Well, the argument was with the per se rule and the definition of lawyers. But even if you didn't adopt the per se rule and you went to the Seventh Circuit, the result would be the same. Affirmance of the district court. Judge Fletcher, his primary point was Heinz, the Heinz rule, which, of course, was not the rule. As Your Honor's had stated, Heinz doesn't apply on all fours here. In fact, Heinz came from the Seventh Circuit, which issued the Avery decision. Heinz is a different issue. Exactly. And one other point, I see my time is about to run out, but to Judge Smith's comment about the pleading not being a model of clarity, we had raised the issue to the district court level that there had been nothing pled in the complaint about his agency. The alleged violation came from fine such. We were drawn in through an agency theory, presumably. It had not been pled correctly under Ashcroft. And they haven't responded to that argument in the reply brief, so. There was no reply brief filed. There was no reply brief. Exactly, Your Honor. I see I'm out of time. Thank you for your time here today. Thank you. We will take this matter under advisement. Oh, you have rebuttal. Absolutely. If you're done with me, I mean, I can go. No, no, we are not. I think you better try to convince the people on the panel. One interesting thing from the discussion of the reasonable attorney is, why hasn't anyone asked the question, would a reasonable attorney have sent that payoff letter? We haven't asked the question whether the collection attorney has acted in a reasonable manner in terms of making demands that were in violation of the act. How is that an inquiry before us under the statute and specifically under the section you've elected to invoke? Only in this regard, that when an attorney is coming in to represent a consumer, under this standard that they're proposing, that attorney now has an elevated responsibility as compared to the sender. They're saying, I could send whatever I want in violation of the act as long as a reasonable attorney can catch it. And we're not looking at it from the standpoint it wasn't reasonable and it's a violation of the act for them to send it in the first place. So why are we placing an elevated burden on the consumer's attorney? The other purpose of that act. Elevated over what? Well, under this, under the EVOI standard and what the Respondents have alleged, this reasonable attorney standard that they had added. Competent attorney. Competent attorney standard. To allege that now that. It really sounds in nothing more than standard negligence law, right? I mean, it wouldn't be materially different than the standard that would apply in a legal malpractice case. Well, except that in this case, the district court said, well, we found it so quickly. The lie was so outrageous and we found it so quickly. No, but the district court never determined whether or not these allegations were false or true. Well, she assumed, she had to have assumed them true for purposes of a motion to dismiss the complaint. We had to assume that the pleading was true. So our allegation was that these were false statements. She assumed that if they were false statements and we found them so quickly, a competent attorney would have known that. And that, I think, begs the question. Because what we look at, again, is that it is behavior that is prohibited by the statute. What if it only, I know the three weeks was just a make-weight for her conclusion. And that was all it was. It was a conclusion. It wasn't fact-based in any event. But what if it had been six weeks? What if it took the attorney eight weeks to respond? Would that have been, you know? I don't know how that came into play except to say that once the false statement was made, no one made the collector make that false statement. It then became the question of, that's the violation. Now the question was, what can we do to protect the consumer from that? It would be like pages of false statements. Absolutely. You've got pages and pages. Yes. Now, how do we determine whether a competent lawyer would have known what within those many pages was false, was deceptive? Well, that's why I say that can't be the standard. And if he misses something, as I said earlier, is he then not competent? Exactly. That's why I say that can't be the standard. And then, then, is it act, is there a cause of action against? And that's why that can't be the standard, and that's why the statute is written the way it does. You focus on the communication as received, and regardless of who is receiving it, if it contained that false statement and made demands for amounts that were not allowed under the law or the agreement, it's a violation of the act, even if there are no damages. And then you're entitled to the statutory penalties plus attorney's fees, et cetera. And it is the idea of Congress was to stop this type of behavior before it happened, not after the fact with a prophylactic by way of an attorney on behalf of the consumer. But the idea of Congress was to protect the consumer, period. There's a, as I said before, it even protected the conscientious collectors from the unscrupulous collectors. Yes, it did. Thank you. Thank you very much.